UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RYAN SOSTAK, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
|   v. | )  2:23-cv-00376-JCN |
| | ) |
| DEREK DAPRATO and DAPRATO | ) |
| FAMILY TRUST, | ) |
| | ) |
|     Defendants | ) |

**ORDER ON DEFENDANTS' MOTION TO REMOVE ENTRY OF DEFAULT AND MOTION TO DISMISS**

Defendant DaPrato Family Trust (the Trust) seeks to set aside the default entered in accordance with Federal Rule of Civil Procedure 55(a) and to dismiss the claim against it in accordance with Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).[1] (Motion, ECF No. 33.) Following a review of the record and after considering the parties' arguments, the Court denies the motion to set aside the default and denies the motion to dismiss.

---

[1] Although the motion is entitled "Defendants' Motion to Remove Entry of Default and Motion to Dismiss," which suggests both defendants are moving for relief, because the substance of the motion and the reply memorandum in support of the motion only contain arguments regarding the Trust, the Court construes the motion as seeking relief solely on behalf of the Trust. At oral argument, counsel for Defendants represented that the filings sought relief solely on behalf of the Trust.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A.   The Assault, the Criminal Case, and the Property Transfer

In August 2019, Defendant Derek DaPrato (Derek), with other individuals, robbed and assaulted Plaintiff; Plaintiff was shot in the abdomen. (Complaint ¶¶ 6–10, ECF No. 1; Prosecution Version at 1–2, 2:21-cr-00015-JDL-4 ECF No. 340.)  Derek was arrested and indicted in July 2021 in the District of Maine for conspiracy to commit Hobbs Act robbery and interference with commerce by violence. (Complaint ¶ 9; Superseding Indictment, 2:21-cr-00015-JDL-4, ECF No. 115; Order, 2:21-cr-00015-JDL-4, ECF No. 319.)  In December 2022, Derek pled guilty to the charges. (Plea Agreement, 2:21-cr-00015-JDL-4, ECF No. 349; Change of Plea Hearing, 2:21-cr-00015-JDL-4, ECF No. 348.) The plea agreement informed Plaintiff that an order to pay restitution to the victims could be imposed.  (Plea Agreement at 2.)

In February 2023, Derek transferred to the Trust certain real property located at 30 Julia Drive in Hooksett, New Hampshire. (Complaint ¶ 15.)[3]  In July 2023, the Court sentenced Derek to 144 months in prison and ordered him to pay Plaintiff restitution of approximately $180,000 in an immediate lump sum. (Complaint ¶¶ 9–10; Judgment, 2:21-cr-00015-JDL-4, ECF No. 456.)

---

[2] The facts are drawn from the complaint and the affidavits filed in connection with the motions. The Court also takes judicial notice of the related cases in this court.

[3] According to the Government, the real property consists of a single-family residence located on approximately 0.37 acres of land.  (Complaint ¶ 16, 2:23-cv-00363-JDL, ECF No. 1 (including a photograph of the house).)  Plaintiff alleged the transfer occurred on February 23, 2023, whereas the Government alleged the transfer occurred on February 17, 2023.  (*Id.* ¶¶ 18–19.)

2

### B.     The Government's Civil Case

In September 2023, the Government initiated a civil action against Derek and the Trust for a fraudulent transfer pursuant to 28 U.S.C. § 3304(b)(1)(A) and (B). (Complaint, 2:23-cv-00363-JDL, ECF No. 1.) According to the Government, the transfer of the real property left Plaintiff insolvent, occurred without consideration, was made to an insider because the trustee is Derek's father and Derek is the beneficiary, and Derek retained control and benefit of the real property because his long-term girlfriend continued to reside at the property. (*Id.* ¶¶ 20, 23, 28–30.) In October 2023, the parties reached a settlement, and the Government voluntarily dismissed the case. (Settlement Agreement, 2:23-cv-00363-JDL, ECF No. 9; Notice of Voluntary Dismissal, 2:23-cv-00363-JDL, ECF No. 10.) Under the terms of the settlement agreement, the Trust agreed that it would sell the property at a fair market price and arrange for the closing agent to transfer the $180,000 to the Clerk of this court, to be used to pay Plaintiff the restitution amount. (Settlement Agreement at 2.) The parties also agreed that "[t]he exclusive jurisdiction and venue for any dispute relating to this agreement is the United States District Court for the District of Maine." (*Id.* at 4.)

### C.     Plaintiff's Civil Case

In October 2023, a few days after the resolution of the Government's case, Plaintiff initiated this civil action against Derek and the Trust for fraudulent transfer pursuant to Maine's Uniform Transfer Act, 14 M.R.S.A. §§ 3571–3582. (Complaint, ECF No. 1.) According to Plaintiff, the property transfer was fraudulent because it was made (1) with intent to hinder, delay and defraud Plaintiff; or (2) without receiving reasonably equivalent

3

value in exchange for the transfer; or (3) to insiders who had reasonable cause to believe Derek was insolvent based on a claim that arose before the transfer was made. (*Id*. ¶ 26.) The Trust was served with the complaint and summons on November 13, 2023. (Summons, ECF No. 9.) On December 6, 2023, when the Trust had not filed a responsive pleading to the complaint, Plaintiff moved for the entry of default as to the Trust. (Plaintiff's Motion for Entry of Default, ECF No. 10.) On the same day, default was entered against the Trust. (Order on Entry of Default, ECF No. 11.)

The next day, December 7, 2023, Arthur DaPrato, Jr., the trustee for the Trust, filed a combined Motion to Extend Time and Motion for Dismissal of Default. (Motion to Extend Time/Motion for Dismissal of Default ECF No. 12.) In the motion, the trustee requested additional time to respond to Plaintiff's filings because although he contacted several lawyers, he had encountered some challenges in securing an attorney to represent the Trust. (*Id*. at 1.) The trustee asserted that "the sale of the assets [Plaintiff] is targeting will not be finalized until January 15, 2024, and I would need another week beyond that to pay contractors, and settle bills with others the DaPrato Family Trust owes for repairs, improvements, and upkeep of the property." (*Id*.) Plaintiff opposed the motion, and the Court held a hearing on December 27, 2023. The Court denied the motion for extension of time and stated, "to the extent that it is subheaded a motion for dismissal of default, that is denied as well." (Hearing Transcript at 7, ECF No. 31.)

Following the hearing, the parties engaged in discovery and negotiations to resolve the matter. Upon the entry of default, the trustee "believed the case to be over except as to what would be owed." (Declaration of Arthur DaPrato ¶ 11, ECF No. 33-1.) The property

4

was sold, and the restitution payment transferred through the court to Plaintiff. (*Id.* ¶ 6.) The trustee asserts that he and other family members paid approximately $60,000 for the mortgage, upkeep, and taxes, and that for several months the trustee attempted to negotiate a resolution of Plaintiff's case by offering to turn over the trust's remaining funds of approximately $29,000. (*Id.* ¶ 11.) When the trustee determined that no resolution was possible, he contacted Attorney Thomas Hallett for representation. (*Id.*)

On April 10, 2024, Attorney Hallett entered his appearance on behalf of the Trust and Derek. (Appearance, ECF No. 26.) On May 21, 2024, Plaintiff filed a motion for default judgment. (Motion for Default Judgment, ECF No. 30.) On June 11, 2024, the Trust filed (1) an opposition to the motion for default judgment (2) a motion to remove the default entry, and (3) a motion to dismiss for lack of personal jurisdiction and failure to state a claim. (Response to Motion for Default Judgment, ECF No. 32; Motion, ECF No. 33.)

With the motions, the Trust filed a declaration of the trustee. (Declaration of Arthur DaPrato, ECF No. 33-1.) In support of the Trust's contention that the Court lacks personal jurisdiction over the Trust, the trustee asserted that the Trust is a New Hampshire entity, that the Trust has never been involved with property or interests in Maine, and that the transfer of the real property in this case occurred in New Hampshire. (*Id.* ¶ 5, 10.) According to the trustee, the Trust's "only asset was real estate located at 30 Julia Drive, Hooksett, New Hampshire." (*Id.* ¶ 6.) The trustee asserted that "[w]hen the real estate was transferred into the Trust, I understood that my son was not responsible for what happened to [Plaintiff]." (*Id.* ¶ 9.)

5

**DISCUSSION**

D.     **Motion to Remove Entry of Default**

    1.     **Rule 55(c) and Rule 60(b) Standards**

The parties disagree as to whether the motion to remove the default is governed by Federal Civil Procedure Rule 55(c), which applies to a request to set aside a default, or by the Federal Civil Procedure Rule 60(b), which applies when a party seeks relief from a final judgment or order. The question arises because Plaintiff contends that the motion constitutes a request for the Court to reconsider its order denying the earlier request to remove the default.[4]

Federal Rule of Civil Procedure 60(b) governs a court's consideration of a request for relief from judgment. Rule 60(b) authorizes a court to relieve a party from a judgment or order on the grounds of "(1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b), (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party, (4) the judgment is void, (5) the judgment has been satisfied; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6)

---

[4] Whether the Court assessed Defendants' request under Rule 55(c) or simply viewed the request as an unsupported or inappropriately filed motion is not clear. At the hearing on the Trust's motion, the Court stated, "I am denying the motion for extension of time. And to the extent that it is subheaded a motion for dismissal of default, that is denied as well." (Hearing Transcript at 7.) The significance of the request and order is further complicated by the fact that the trustee appeared pro se on behalf of the Trust and an individual trustee cannot represent the Trust in this proceeding. *See United States v. Ponte*, 246 F. Supp. 2d 74, 75-76 (D. Me. 2003) (trustees "cannot represent trusts in federal court because only lawyers can represent trusts") (citing *Knoefler v. United Bank of Bismark*, 20 F.3d 347, 348 (8th Cir. 1994); *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697-98 (9th Cir. 1987)). The Court will assess the current motion under both Rule 55(c) and Rule 60(b).

any other reason that justifies relief." A party must file the motion within a reasonable time, and for grounds 1 through 3, the party must file the motion within one year of the judgment. Fed. R. Civ. P. 60(c)(1).

Federal Rule of Civil Procedure 55(c) provides in pertinent part that a "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(a). "[T]he standard for relief for 'good cause' under Rule 55(c) is more liberal than the standard for relief from judgment under Rule 60(b)." *Phillips v. Weiner*, 103 F.R.D. 177, 181 (D. Me. 1984). The First Circuit explained:

> A court may set aside a default for good cause. This standard is a liberal one; the relevant factors are whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious.

*United States v. $23,000 in United States Currency*, 356 F.2d 157, 166-67 (1st Cir. 2004) (citations and internal quotation marks omitted.) The factors, however, are not exclusive and "a court may also examine into such things as the proffered explanation for the default, the good faith of the parties, the amount of money involved, and the timing of the motion." *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989); *see also KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003) (outlining Rule 55(c) considerations).

If the Court were to apply the Rule 60(b) standard and principles, the Trust's personal jurisdiction defense would be paramount because the Court could not enter default judgment against the Trust if the Court lacked personal jurisdiction over the Trust. *See Precision Etchings & Findings, Inc., v. PGP Gem, Ltd.*, 953 F.2d 21, 23 (1st Cir. 1992) ("A default judgment entered by a court which lacks jurisdiction over the person of the defendant is void and may be set aside *at any time* pursuant to Fed.R.Civ.P. 60(b)(4)")

7

(emphasis in original) (citations omitted); *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997) (noting that "judgment by default should not be entered without a determination that the court has jurisdiction over the defendant").

If the Court were to apply the more lenient Rule 55(c) standard, without considering the meritorious defense issue, the relevant factors would weigh against setting aside the default. The timing of the motion and the explanation for the default are particularly problematic for Plaintiff. The Trust asserted difficulties obtaining counsel at the original hearing after the entry of default, and the Court found that explanation insufficient at that time. Counsel did not enter an appearance on behalf of the Trust until more than three months later. Furthermore, the Trust did not file a motion to set aside the default until more than five months following the Court's ruling in December and only after Plaintiff moved for default judgment. Even if the Court were to discount the significance of the time between counsel's entry of appearance and the filing of the motion because of counsel's medical needs,[5] Plaintiff offers no persuasive argument to justify the time from the December court hearing and counsel's entry of appearance in April.

The Trust's claim of a lack of personal jurisdiction, however, is potentially a compelling factor in the assessment of the Trust's motion under Rule 55(c). The purpose of the meritorious defense inquiry is to determine whether there is a sufficient likelihood "that the suit will have an outcome different from the result achieved by default." *Phillips*,

---

[5] Counsel represents that on April 18, 2024, one week after he entered his appearance, he underwent surgery and was unable to work meaningfully for four weeks following the surgery. (Motion at 1, n.1.)

8

103 F.R.D. at 181. The party seeking to set aside a default or default judgment "need not establish his [or her] defense conclusively, but he [or she] must present evidence of facts that, if proven at trial, would constitute a complete defense." *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (citations and quotation marks omitted); *see also*, *Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008) ("Whether a meritorious defense exists is determined by examining whether the proffered evidence would permit a finding for the defaulting party") (quotation marks omitted); *Pennsylvania Nat. Bank & Tr. Co. v. Am. Home Assur. Co.*, 87 F.R.D. 152, 155 (E.D. Pa. 1980) ("To convince the court that defendant has a valid defense, it must produce credible factual allegations rather than a perfunctory statement that a meritorious defense exists").[6]

Because a judgment entered without the Court's personal jurisdiction over the Trust would be voidable, whether to set aside the default or proceed with a default judgment hearing depends on whether the Trust has established a credible personal jurisdiction defense, regardless of whether the Court applies the Rule 60(b) standard or the Rule 55(c) standard. *See Brown v. Dash*, No. 20-10980-FDS, 2020 WL 6806433, at * 6 (D. Mass.

---

[6] Outside the context of a motion to set aside a default or default judgment, a plaintiff typically has the burden to show that personal jurisdiction exists. As one court explained:

> When the district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiffs may bear their burden by presenting a prima facie case that personal jurisdiction is proper. In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.

*99869 Canada, Inc. v. Glob. Sec. Networks, Inc.*, No. CV H-16-2788, 2016 WL 6820394, at *1 (S.D. Tex. Nov. 17, 2016) (internal quotations and modifications omitted).

Nov. 18, 2020) (a sufficient "claim of lack of personal jurisdiction may constitute a meritorious defense that provides good cause to set aside the entry of default"); *Loop Prod. v. Cap. Connections LLC*, 797 F. Supp. 2d 338, 347 (S.D.N.Y. 2011) (analyzing the personal jurisdiction defense based on plaintiff's factual allegations and defendant's "own representations and admissions" to determine whether the defense might be meritorious).

One court, when presented with the situation before this Court—a motion for entry of default judgment and a motion to set aside the default—concluded that it was appropriate to consider the merits of the jurisdictional defense before determining whether to set aside the default. The Court reasoned:

> The court will first consider [the defendant's] challenge to the court's personal jurisdiction over him, because lack of such jurisdiction would bar the court from considering the entry of default judgment and would also necessitate vacating the entry of default by the Clerk of Court.

*DIRECTV, Inc. v. Meyers*, 214 F.R.D. 504, 508 (N.D. Iowa 2003). The court's reasoning is logical and sound. Here, the parties have briefed the merits of the jurisdictional challenge in their memoranda regarding the Trust's request to set aside the default and the Trust has asserted through a sworn declaration the facts that support its personal jurisdictional challenge. At oral argument, the parties agreed that the Court could determine whether the Court has personal jurisdiction over the Trust based on the current record and the parties' arguments. The Court, therefore, will assess the merit of the Trust's personal jurisdiction defense.

## 2. Personal Jurisdiction Defense

When state law governs a plaintiff's claims in federal court, such as in a case where subject matter jurisdiction is based on diversity of citizenship, a federal district court's authority over the person of a defendant is the same as that of a state court. *Tice v. Taiwan Shin Yeh Enter. Co.*, 608 F. Supp. 2d 119, 121 (D. Me. 2009). A federal court, therefore, looks to the state's long-arm statute and the Due Process Clause of the United States Constitution. *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014). The Maine long-arm statute provides that state courts may exercise jurisdiction over claims against nonresident persons "to the fullest extent permitted by the due process clause," 14 M.R.S. § 704-A(1), and thus the due process inquiry generally controls. The requirements of due process can be satisfied based on voluntary consent or submission to the forum court's authority, based on physical presence in the forum state, or based on the absent defendant's contacts with the forum. *Burnham v. Superior Ct. of California, Cnty. of Marin*, 495 U.S. 604, 610, 617–19 (1990) (discussing continued vitality of the historical presence and consent tests after the advent of the modern doctrine of *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310 (1945)).

Personal jurisdiction based on a defendant's contacts with the forum "may, consistent with due process, be either 'specific or case-linked' or 'general or all-purpose.'" *Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (1st Cir. 2015) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction "requires affiliations 'so continuous and systematic as to render [a person] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (quoting *Goodyear*,

11

564 U.S. at 919 (quotation marks omitted). The parties' allegations and arguments here do not implicate general jurisdiction concepts.

Specific jurisdiction requires (1) relatedness, (2) purposeful availment of benefits or purposeful direction of injury, and (3) reasonableness. Wright and Miller, Federal Practice and Procedure § 1069 (4th ed.); *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 122 (1st Cir. 2022). "To demonstrate relatedness, [a plaintiff] must show a demonstrable nexus between [the] claims and [the defendant's] forum-based activities, such that the litigation itself is founded directly on those activities." *Adelson v. Hananel*, 652 F.3d 75, 81 (1st Cir. 2011) (internal quotation marks and modifications omitted). To satisfy the purposefulness requirement, "the defendant's contacts with the forum state [must] represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws," *Scottsdale Cap. Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018), or the defendant must have "committed an intentional act . . . expressly aimed at the forum state . . . causing harm that the defendant knows is likely to be suffered in the forum state." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023) (discussing "effects tests" of *Calder v. Jones*, 465 U.S. 783 (1984)).[7] To assess reasonableness, which "play[s] a large

---

[7] *See also*, *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 907 (10th Cir. 2017); *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010); *Hugel v. McNell*, 886 F.2d 1, 5 (1st Cir. 1989) ("The [defendants] knew that release of the allegedly false information would have a devastating impact on [the plaintiff], and it can be fairly inferred that they intended the brunt of the injury to be felt in [the forum state] where [the plaintiff] had an established reputation as a businessman and public servant"); *Levin v. Harned*, 304 F. Supp. 2d 136, 148 (D. Mass. 2003) ("Numerous courts have upheld a court's exercise of personal jurisdiction over non-resident defendants with no [other] direct contact with the forum when the intentional tort was individually targeted at the resident of the forum state, and the brunt of the harm was felt there").

role in close cases" under the other two elements, courts consider five factors intended to aid the court in achieving substantial justice. *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 61 (1st Cir. 2016).[8]

Some courts "have been somewhat reluctant to exercise personal jurisdiction over non-resident transferees in fraudulent transfer cases" based only on the fact that "the creditor *is* a forum resident." *Luxton v. Leja*, No. 14-cv-416-JED-JFJ, 2019 WL 157731, at * (N.D. Okla. Jan. 10, 2019) (emphasis in original). As support for this observation, the court in *Luxton* cited *Mullins v. TestAmerica, Inc.*, 564 F.3d 386 (5th Cir. 2009), where the court was "skeptical . . . that a non-resident defendant's receipt of assets transferred with an intent to hinder, delay, or defraud a creditor *ipso facto* establishes personal jurisdiction in the state where a complaining creditor resides." 564 F.3d at 400; *see also*, *Devinsky v. Kingsford*, No. 05 CIV. 2064 (PAC), 2008 WL 857525, at *5 (S.D.N.Y. Mar. 31, 2008), on reconsideration in part, No. 05 CIV 2064 (PAC), 2008 WL 2704338 (S.D.N.Y. July 10, 2008) (finding no personal jurisdiction over passive recipient of allegedly stolen funds because the plaintiff offered "only conclusory and speculative statements pertaining to [the transferee's] cognizance of the wrongfulness of the transfers"); *Nastro v. D'Onofrio*, 263 F. Supp. 2d 446, 452 (D. Conn. 2003). That conclusion is a sound application of the principle that, without more, it is not enough "to rely on a defendant's random, fortuitous,

---

[8] The five factors are: "(1) the defendant's burden of appearing in the forum state, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Id.* (quotation marks and modification omitted).

or attenuated contacts or on the unilateral activity of [another]" and that "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

In contrast, with "near uniformity," courts have found the requisite purposefulness to create personal jurisdiction over nonresident transferees when there was a greater degree of participation or knowledge about the transferor's improper attempt to block a creditor's claim, "especially . . . where the fraudulent transfer hinders the collection of a judgment previously issued by a court in the forum state or would impair rights under a contract connected to the forum." *Seward v. Richards*, 174 N.H. 401, 410–11, 265 A.3d 9, 19 (2021); *see also, Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 402 (5th Cir. 2009) ("we find that [defendant] should reasonably have anticipated being haled into a Texas court for precipitating and directing an alleged fraudulent transfer at the expense of a known, major creditor in Texas whose right to payment arises out of contracts that share a strong connection with Texas"); *Dontos v. Vendomation NZ Ltd.,* 582 F. App'x 338, 345 (5th Cir. 2014)*; Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 14 (3d Cir. 2008); *Lobster 207, LLC v. Pettegrow*, No. 1:19-CV-00552-LEW, 2024 WL 691383, at *6 (D. Me. Feb. 20, 2024); *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, No. 4:12CV246 CDP, 2013 WL 3338501, at *5 (E.D. Mo. July 2, 2013). In other words, courts have found "that they could properly exercise personal jurisdiction over nonresident transferees where, as here, those transferees knowingly participated in fraudulent transfers designed to frustrate a party's

14

ability to collect on an in-state judgment." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2021 WL 4443962, at *7 (S.D.N.Y. Sept. 28, 2021).

Here, the trustee has asserted that the Trust was formed in New Hampshire, that it has never had any Maine assets, and that the transfer of the subject property occurred in New Hampshire. There is no reason to question, and Plaintiff did not challenge, the first two assertions. The site of the transfer, however, is at least debatable. The record in the criminal case reveals that at the time Derek signed the documents to achieve the transfer, he was in federal custody pursuant to the criminal proceedings in the District of Maine. Derek happened to have been placed at a federal corrections center in New Hampshire, but because he was in custody awaiting sentencing in a Maine court, the formal acts required to achieve the transfer at least arguably had significant connection to Maine for purposes of analyzing whether the transfer constituted a contact between the Trust and Maine.

Even if the Court accepts the trustee's assertions, the overall circumstances favor the Court's personal jurisdiction over the Trust. The record reflects the following: Derek pled guilty to the crimes approximately two months before he transferred the subject property without adequate value to an insider (a trust whose trustee is his father); the Trust did not dispute the Government's assertion that Derek maintained control and benefit of the subject property after the transfer (even though Derek was in custody at the time); the trustee did not dispute that Derek is the beneficiary of the Trust; and the Trust admitted that its only asset was the subject property (now the proceeds of the sale of that property). Furthermore, the record lacks any facts that would plausibly support a finding that the Trust was unaware of the fraudulent purpose of the transfer of the property—its sole asset.

Notably, the record contains no evidence to suggest that the Trust existed for a purpose other than to own the property, or that the Trust was unaware of the criminal charges pending against Derek at the time of the transfer.[9] The only plausible inference that could be drawn on this record is that the Trust at least had some knowledge of Derek's wrongful intent when the Trust accepted transfer of the subject property.

In short, the credible evidence on the record, which is mostly undisputed, including the Trust's representations and admissions, and the reasonable inferences drawn from the evidence establish that the Trust was at least aware of, if not a participant in, the effort to defraud, hinder, or delay a Maine resident's ability to recover for claims arising from conduct occurring in Maine and being adjudicated in a Maine court.  The Court, therefore, finds there is the requisite relatedness, purposeful availment / purposeful direction, and reasonableness for the Court to exercise personal jurisdiction over the Trust.

The mere assertion of a jurisdiction-related defense does not warrant the Court setting aside the default.  As explained above, the Court finds that the Court has personal

---

[9] To the contrary, the trustee was aware of the charges as evidenced by his assertion that "When the real estate was transferred into the Trust, I understood that my son was not responsible for what happened to [Plaintiff]."  (Arthur DePrato Declaration ¶ 9.)  Through the statement, the trustee evidently attempts to suggest that he, acting for the Trust, did not understand the transfer was to avoid paying some obligation to Plaintiff.  Even if the record in the criminal case could be construed to suggest that Derek might be less culpable than his coconspirators, the record, including the plea agreement, cannot reasonably be construed to support a conclusion that Derek was not responsible or could not be held responsible for what happened to Plaintiff.  A factfinder could not plausibly infer that the Trust was entirely unaware that the purpose of the transfer was to protect the asset due to the substantial likelihood of a restitution order or a civil claim.

jurisdiction over the Trust. The Court, therefore, discerns no basis to set aside the default under either the Rule 55(c) standard or the Rule 60(b) standard.[10]

### E.     Motion to Dismiss

Defendants' motion to dismiss relies primarily on the personal jurisdiction issue previously discussed. As explained above, because the Court has concluded that the Court has personal jurisdiction over the Trust, the Court finds no reason to set aside the default and, therefore, the dismissal based on the personal jurisdiction issue is not warranted. Similarly, as noted above, to the extent Defendants contend that Plaintiff has failed to allege an actionable claim, Defendants' argument is not persuasive. The Court, therefore, denies the motion to dismiss.

### CONCLUSION

Based on the foregoing analysis, the Court determines that the Court has personal jurisdiction over the Trust, denies the motion to set aside the default, and denies the motion to dismiss. The Court will schedule a hearing on the motion for default judgment.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 26th day of September, 2024.

---

[10] In their filings, Defendants also assert as a meritorious defense that Plaintiff has failed to state a claim upon which relief can be granted. Defendants' argument is unavailing. Plaintiff has alleged sufficient facts to assert a claim under Maine's Uniform Transfer Act, 14 M.R.S.A. §§ 3571–3582.